Daniel A. Lev (CA Bar No. 129622)
  dlev@sulmeyerlaw.com
**Sulmeyer**Kupetz
A Professional Corporation
333 South Grand Avenue, Suite 3400
Los Angeles, California  90071-1406
Telephone: 213.626.2311
Facsimile: 213.629.4520

Attorneys for Hollywood for Children Inc., Debtor and Debtor in Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Case No. 2:20-bk-18801-RK |
| HOLLYWOOD FOR CHILDREN, INC., a New York non-profit corporation, | Chapter 11 |
| | (Subchapter V) |
| Debtor. | **NOTICE OF MOTION AND DEBTOR AND DEBTOR IN POSSESSION'S MOTION FOR ORDER AUTHORIZING PRIVATE SALE OF PERSONAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PAUL G. ALBERGHETTI IN SUPPORT THEREOF** |
| | DATE:      May 24, 2022<br>TIME:      11:00 a.m.<br>PLACE:    Courtroom "1675" |

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

DAL 2734224v1

**TO THE HONORABLE ROBERT KWAN, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE SUBCHAPTER V TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

  **PLEASE TAKE NOTICE** that, pursuant to its "Notice of Motion and Debtor and Debtor in Possession's Motion for Order Authorizing Private Sale of Personal Property Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363; Memorandum of Points and Authorities; Declaration of Paul G. Alberghetti in Support Thereof" (the "Motion"), Hollywood for Children, Inc., a New York non-profit corporation (the "Debtor"), the debtor and debtor in possession herein, hereby seeks an order, among other things, authorizing the sale of certain defined personal property free and clear of liens, claims, encumbrances, and interests, on an "as is" "where is" basis, by private sale to be conducted by Christie Manson & Woods Limited ("Christie's").  In addition, the Debtor seeks an order (i) authorizing it to execute any and all documents that may be necessary to consummate the private sale; (ii) determining that buyers are entitled to the good faith protections afforded by 11 U.S.C. § 363(m); and (iii) waiving the fourteen (14) day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

  **PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion shall take place on May 24, 2022, at 11:00 a.m., Pacific Time, or as soon thereafter as the matter may be heard, in Courtroom "1675" of the above-entitled Court, located at 255 E. Temple Street, Los Angeles, California 90012, before the Honorable Robert Kwan, United States Bankruptcy Judge, presiding.

  **PLEASE TAKE FURTHER NOTICE** that, due to the COVID-19 outbreak, the Court will be holding all hearings remotely until further notice.  Some hearings will be held via telephone using CourtCall and some hearings will be held via ZoomGov.  The cover page for the publicly posted hearing calendar will state whether the hearings that day will be held via telephone by CourtCall or via ZoomGov.  The calendar is posted to the public prior to the hearing and can be accessed at the following web address:

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  http://ecf-ciao.cacb.uscourts.gov/CiaoPosted/?jid=BB (Click on the "Select Judge" tab on

2  the upper left side of the screen and select Judge Kwan).

3  **PLEASE TAKE FURTHER NOTICE** that the Motion is made and based

4  upon the notice, the moving papers, the attached memorandum of points and authorities

5  and the declaration of Paul G. Alberghetti in support thereof, the pleadings filed in the

6  Debtor's case, all judicially noticeable facts, the arguments and representations of

7  counsel, and any oral or documentary evidence presented at the time of the hearing, if

8  any.

9  **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy

10  Rule 9013-1(f), any party opposing the relief requested in the Motion must file and serve

11  a written opposition no later than fourteen (14) days prior to the scheduled hearing on the

12  Motion.

13  **PLEASE TAKE FURTHER NOTICE** that copies of any timely filed

14  opposition must be served upon the Debtor's counsel of record as set forth on the first

15  page of this Motion.

16  **PLEASE TAKE FURTHER NOTICE** that, pursuant to Local Bankruptcy

17  Rule 9013-1(h), the failure to timely file and serve an opposition to the Motion in

18  accordance herewith may be deemed by the Court to be consent to the relief requested

19  in the Motion.

20  DATED: May 3, 2022                    **Sulmeyer**Kupetz
                                          A Professional Corporation

21

22

23                                        By: /s/ *Daniel A. Lev*
                                              Daniel A. Lev
24                                            Attorneys for Hollywod for Children, Inc.,
                                              Debtor and Debtor in Possession
25

26

27

28

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

## **MOTION**

Through its "Notice of Motion and Debtor and Debtor in Possession's
Motion for Order Authorizing Private Sale of Personal Property Free and Clear of All
Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363; Memorandum of Points
and Authorities; Declaration of Paul G. Alberghetti in Support Thereof" (the "Motion"),
Hollywood for Children, Inc., a New York non-profit corporation (the "Debtor"), the debtor
and debtor in possession herein, hereby seeks an order, among other things, authorizing
the sale of certain defined personal property free and clear of liens, claims,
encumbrances, and interests, on an "as is" "where is" basis, by private sale to be
conducted by Christie Manson & Woods Limited ("Christie's").  In addition, the Debtor
seeks an order (i) authorizing it to execute any and all documents that may be necessary
to consummate the private sale; (ii) determining that buyers are entitled to the good faith
protections afforded by 11 U.S.C. § 363(m); and (iii) waiving the fourteen (14) day stay
prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

The Motion is made and based upon the notice, the moving papers, the
attached memorandum of points and authorities and the declaration of Paul G.
Alberghetti in support thereof, the pleadings filed in the Debtor's case, all judicially
noticeable facts, the arguments and representations of counsel, and any oral or
documentary evidence presented at the time of the hearing, if any.

**WHEREFORE** the Debtor respectfully requests that the Court enter an
order:

(1)      granting this Motion;

(2)      authorizing the sale of certain defined personal property free and
clear of liens, claims, encumbrances, and interests, on an "as is" "where is" basis, by
private sale to be conducted by Christie's;

(3)      authorizing the Debtor to execute any and all documents that may be
necessary to consummate the private sale;

1          (4)      determining that buyers are entitled to 11 U.S.C. § 363(m)

2    protection;

3          (5)      waiving the fourteen (14) day stay prescribed by Rule 6004(h) of the

4    Federal Rules of Bankruptcy Procedure; and

5          (6)      granting such other and further relief as this Court deems just and

6    proper under the circumstances.

7    DATED: May 3, 2022                    **Sulmeyer**Kupetz
                                           A Professional Corporation
8

9

10                                         By: /s/ *Daniel A. Lev*
                                              Daniel A. Lev
11                                            Attorneys for Hollywood for Children, Inc.,
                                              Debtor and Debtor in Possession
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## JURISDICTION AND VENUE

This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334(b). Venue in this Court is proper pursuant to 28 U.S.C. § 1409(a).  The Motion is a core matter pursuant to 28 U.S.C. § 157(b)(2)(A), (b)(2)(N), and (b)(2)(O) and, therefore, this Court has the constitutional authority to enter a final ruling on the merits.  Stern v. Marshall, 564 U.S. 462, 499, 131 S. Ct. 2594, 180 L. Ed. 2d 475 (2011).  The statutory predicate for the Motion is 11 U.S.C. § 105(a), 11 U.S.C. § 363, and 11 U.S.C. § 1184.

## II.

## PREFATORY STATEMENT

In December 2020, the Debtor filed its "Debtor and Debtor in Possession's Plan of Reorganization" (the "Plan") [Docket No. 31], which outlines the orderly liquidation of the Debtor's assets and the payment of allowed claims according to the Bankruptcy Code's distribution scheme on the "effective date."[1]  The Debtor continues to believe that its Plan will be consensual, and it has been diligently working with the Subchapter V Trustee and interested creditors, particularly Sean Ferrer ("Ferrer"), to reach that goal. To this end, since the Plan was first filed, the parties have engaged in good faith settlement discussions regarding certain issues raised by Ferrer concerning the allowance, treatment, and characterization of the scheduled claims of the Debtor's two principals, Paul G. Alberghetti and Luca Dotti, as well as the proper method for marketing the Debtor's assets.

To address these discrete issues, on October 8, 2021, the Debtor, Mr. Dotti, Mr. Alberghetti, and Mr. Ferrer attended a voluntary mediation with the Subchapter V Trustee serving as the mediator.  Without divulging confidential settlement discussions,

---

[1] At the request of the Debtor, the confirmation hearing on the Plan has been continued several times, the most recent to July 14, 2022.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  the parties discussed Ferrer's concerns regarding the marketing and sale of the assets,

2  including his efforts to elicit the interest of an international auction house to market the

3  memorabilia, and they also discussed the nature and scope of Mr. Dotti and Mr.

4  Alberghetti's individual claims.  The mediation concluded with the parties agreeing to

5  attend a second mediation session once additional information on certain key issues was

6  provided.  As a result of the second session, and ongoing settlement discussions, the

7  parties were able to reach consensus on the marketing of the Debtor's most saleable

8  assets.

9        As such, the Debtor has executed a "Seller's Agreement" (the "Agreement")

10  with Christie Manson & Woods Limited ("Christie's"), one of the world's premier auction

11  houses, that will govern the sale of the initial tranche of personal property assets of the

12  estate.  Christie's has a history with marketing for sale Audrey Hepburn's memorabilia.  In

13  fact, in 2017, Christie's conducted an auction of personal items of Ms. Hepburn, which

14  included Ms. Hepburn's extensive personal wardrobe, her own annotated copies of film

15  scripts from her best-loved films, including Breakfast at Tiffany's, original portraits by

16  major photographers from her personal archive, and other memorabilia.  As such,

17  Christie's has an institutional knowledge of Ms. Hepburn's collections and the market for

18  such memorabilia.[2]

19        Through this Motion, the Debtor now seeks approval of a private sale of the

20  defined personal property free and clear of liens, claims, encumbrances, and interests on

21  an "as is" "where is" basis.  The Debtor believes all prerequisites for approval of the sale

22  under applicable provisions of the Bankruptcy Code have been satisfied and it therefore

23  urges the Court to grant the Motion.

24  _____

25  [2] Concurrently with the filing of this Motion, the Debtor has caused to be filed its "Debtor and Debtor in Possession's Application for Order Authorizing Employment of Christie Manson & Woods Limited As Agent
26  Pursuant to 11 U.S.C. §§ 327(a), 328(a), and 329; Declaration of Adrian Hume-Sayer in Support Thereof" (the "Christie's Application"), pursuant to which the Debtor seeks an order authorizing the employment of
27  Christie's to act the Debtor's sales agent.  The Christie's Application will be heard concurrently with this Motion.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

III.

## RELEVANT BACKGROUND

A.    **History of Debtor and Reasons for Filing Chapter 11**

In 1994, the legendary actress Audrey Hepburn's sons, Sean Ferrer ("Ferrer") and Luca Dotti, created "Hollywood for Children, Inc. a New York non-profit corporation dba the Audrey Hepburn Children's Fund" in order to continue their mother's humanitarian work. The Debtor supported its many diverse programs through corporate business partnerships, licensing, events, co-ventures with other foundations or institutions, and public support.

In order to establish that it had separate enduring rights to use Audrey Hepburn's name and likeness without Ferrer's consent, even though Ferrer (with his brother) were the sole owners of her intellectual property rights, a declaratory relief action was commenced by the Debtor against Ferrer in 2019. The Debtor also sought monetary damages from Ferrer for his alleged interference with agreements that the Debtor entered into with third parties, allegedly permitting them to engage in the use of Audrey Hepburn's name and likeness without Ferrer's consent. Ferrer filed a cross-complaint against the Debtor and others in the litigation.

In October 2019, however, the trial court found that the Debtor never had the independent right to use Miss Hepburn's name and likeness, other than as part of its dba: "The Audrey Hepburn Children's Fund." Thus, the court found that the Debtor's actions (entering into contracts with third parties without Ferrer's consent) exceeded its rights and were unlawful. By virtue of finding in Ferrer's favor, the court also found that there was no legal basis for the Debtor's claim for interference with contract and therefore ruled in Ferrer's favor on the Debtor's damage claim as a matter of law, declining to permit that claim go to trial. As a result, a money judgment was entered in favor of Ferrer.

Despite attempts to resolve the dispute, the Debtor believed it had no alternative but to seek protection of the bankruptcy court in order to prevent any

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  enforcement actions and to preserve the Debtor's assets over which there was no

2  ownership dispute, including a collection of Richard Avedon photographs, a collection of

3  couture clothing by Hubert de Givenchy consisting of gowns and accessories (the subject

4  of this Motion), and other assorted memorabilia and personal property.[3]

5       **B.**    **Commencement of Chapter 11**

6       On September 28, 2020 (the "Petition Date"), the Debtor filed its chapter 11

7  petition.  As reflected in the voluntary petition, the Debtor elected to proceed under

8  Subchapter V of chapter 11.  The Debtor is authorized to operate its business and

9  manage its property and financial affairs as a debtor in possession pursuant to 11 U.S.C.

10  §§ 1107(a) and 1108.  No creditors committee has been appointed, although Andrew

11  Levin (the "Subchapter V Trustee") has been appointed and continues to serve as the

12  Subchapter V trustee.  As noted, the Debtor's chapter 11 case was filed for the purpose

13  of protecting its valuable assets and to give the Debtor the opportunity to utilize, as

14  necessary and appropriate, its property to underwrite a plan of reorganization.

15       As stated earlier, the Plan provides for the sale of the Private Sale Property

16  to facilitate the Debtor's reorganization efforts.  Specifically, the sale of the Private Sale

17  Property will enable the Debtor to fulfill the goal of confirming the Plan and ensuring a

18  _____

19  [3] The personal property subject to the Motion is described in Part 3 of the Agreement with Christie's, but

20  consists of the following: (i) white organdy blouse and black skirt with belt, (ii) neon pink silk organza bolero
jacket with black beading, (iii) black silk velvet bolero jacket with bead work trim, (iv) black wool/silk satin
Bolero jacket, long sleeves, (v) black long silk evening dress with white rose pin, (vi) evening gown with

21  white beaded bodice and black tulle skirt with a camelia at the hip, (vii) sleeveless black silk satin dress
with bolero in black velvet, decorated with white porcelain beads & stones, (viii) long sleeveless evening

22  gown of black polka dotted silk gazar, the hip with a pink organza rose, (ix) sleeveless dress in white silk
gazar with black dots and stripes, black & white striped shawl, (x) Egyptian style blue teal chiffon evening

23  gown, with beaded, strapless bodice and a matching sash, (xi) off white satin evening dress, (xii) black
satin evening dress, (xiii) long, red organza dress with round neckline, (xiv) off white silk crepe evening

24  dress, top embroidered with gold and white sequins with jacket, (xv) black silk velvet long evening gown
with leg of mutton sleeves and applique flowers, (xvi) black velvet cocktail dress, long red satin pleated

25  sleeves, with application of beads on epaulets, (xvii) replica light pink cashmere wedding dress matching
triangular headscarf, (xviii) replica two piece ball gown of white organza, embroidered in black with flowers

26  and trimmed with white beadwork, with painted detail, (xix) orange double-breasted coat in double wool,
long sleeves, (xx) long sleeveless evening dress in black satin, (xxii) cocktail dress in black cloquee silk,

27  sleeveless, (xxiii) black wool two-piece double-breasted crepe suit, long sleeves suit from  "Sabrina", 1953,
(xxiv) long evening dress black velvet and tulle, and (xxv) off white satin pleated hat.  This personal
property is collectively referred to herein as the "Private Sale Property."

28

1   distribution to general unsecured creditors.  Approval of the sale outlined in this Motion

2   will aid in that effort.

3                                                 IV.

4                              **SUMMARY OF RELIEF REQUESTED**

5              By this Motion, the Debtor requests authority to conduct a private sale of

6   the Private Sale Property free and clear of all liens, claims, and encumbrances pursuant

7   to 11 U.S.C. § 363(f), and Bankruptcy Rules 4001 and 6004.  Section 363 provides, in

8   relevant part, that the Debtor "after notice and a hearing, may sell, other than in the

9   ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  Pursuant to

10  Section 363(d), if the debtor is not a moneyed business, the debtor "may only sell

11  property in accordance with non-bankruptcy law applicable to the transfer of property by

12  a debtor that is such a corporation."  11 U.S.C. § 363(d).

13             Furthermore, when a non-profit corporation is in bankruptcy, the corporation

14  may participate in any proceedings provided for under title 11 and/or necessary to put

15  into effect a plan of reorganization.  Here, the proposed private sale is authorized under

16  Section 363 and is a necessary step to assist in funding the Plan.  Out of an abundance

17  of caution, the Debtor's Board of Directors has proposed and adopted resolutions

18  authorizing the retention of Christie's and the sale of the Private Sale Property.

19             Under the Agreement, the Debtor is expecting to receive no less than

20  $600,000 in net sales proceeds from the private sale, which the Debtor believes is more

21  than fair value.  The proceeds of the private sale, after payment of Christie's

22  commissions and expenses, will be held by the Debtor for further distributions in

23  accordance with the terms of the Plan after confirmation and consummation thereof.

24             The Debtor believes that the best interests of its estate and creditors will be

25  served by authorizing the sale of the Private Sale Property free and clear of all third party

26  interests, liens, claims, charges, and encumbrances against the same.  Specifically,

27  absent the private sale, retaining the Private Sale Property would provide little to no

28  benefit to the Debtor and its creditors as the Debtor has ceased fulfilling its initial

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  charitable mission and the assets would likely deteriorate and further diminish in value

2  before being monetized.

3  **V.**

4  **THE PRIVATE SALE IS IN THE BEST INTERESTS OF THE ESTATE**

5       As just mentioned, Section 363(b)(1) of the Code allows a debtor in

6  possession to "use, sell, or lease, other than in the ordinary course of business, property

7  of the estate . . . ."  A debtor in possession may use estate property outside the ordinary

8  course of business as long as it articulates a sound business reason.  See In re Iridium

9  Operating LLC, 478 F.3d 452, 466 (2d Cir. 2007) (relief under Section 363(b) "is

10  permissible if the 'judge determining [the] . . . application expressly find[s] from the

11  evidence presented before [him or her] at the hearing [that there is] a good business

12  reason to grant such an application'") (quoting In re Lionel Corp., 722 F.2d 1063, 1071

13  (2d Cir. 1983) (in considering a Section 363(b) motion, "a bankruptcy judge must not be

14  shackled with unnecessarily rigid rules when exercising the undoubtedly broad

15  administrative power granted him under the Code," but must simply find a "good business

16  reason" supporting the proposed transaction)).

17       In approving a sale outside the ordinary course of business, the court must

18  not only find a sufficient business reason for the sale, it must further find that the sale is in

19  the best interests of the estate.  In other words, the sale is fair and reasonable, it has

20  been adequately marketed, it has been negotiated and proposed in good faith, and it is

21  an "arms' length" transaction.  See In re Wilde Horse Enterprises, Inc., 136 B.R. 830

22  (Bankr. C.D. Cal. 1991) (in determining whether a proposed sale of equipment was

23  proper under Section 363, court considered whether the terms of proposed sale were fair

24  and equitable, whether there was a good business reason for completing the sale and

25  whether the transaction was proposed in good faith).  See also Matter of Phoenix Steel

26  Corp., 82 B.R. 334, 335-356 (Bankr. D. Del. 1987).

27       Additional factors a court should consider in deciding whether to approve a

28  sale of property under Section 363 include the integrity of the sale and the preservation of

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

11

1  the best interests of the estate.  See In re Alves, 52 B.R. 353 (Bankr. D. R.I. 1985); see

2  also In re Investors Funding Corporation of New York, 592 F.2d 134, 135 (2d Cir. 1979)

3  cert. denied, 444 U.S. 830 (1979) (a sale of an estate's interest in real or personal

4  property generally is allowed under Section 363 if the estate has equity in the property

5  and the sale is in the best interest of the estate).

6        A.    **Sound Business Justification for the Private Sale**

7        The Debtor has a sound business justification for the proposed sale of the

8  Private Sale Property to whatever offerors Christie's is able to procure through its world-

9  wide contacts and marketing efforts.  The sale, in turn, will infuse the estate with

10  significant cash that will be used to pay allowed claims of the estate.  The timing of the

11  private sale is crucial given the continuing accrual of storage fees that the Debtor has

12  limited funds to satisfy, as well as the prospect of the Private Sale Property deteriorating

13  and becoming devalued by the sheer passage of time.  As a result, the private sale of the

14  Private Sale Property is justified since it will generate significant funds for the estate and

15  the price to be paid is fair and reasonable, as discussed below.

16        B.    **Adequate Notice of Proposed Private Sale**

17        The Debtor has provided adequate notice of the proposed sale of the

18  estate's interest in the Private Sale Property to all creditors, parties in interest, parties on

19  the master service list, and all persons required to receive notice pursuant to Bankruptcy

20  Rules 6004(a), 6004(c), and 9014, with sufficient notice to allow any party in interest to

21  object to the proposed sale.  In addition, Christie's, the proposed sales agent, will be

22  actively marketing the Private Sale Property through its internal database of prospective

23  buyers and will continue to do so through the term of the Agreement, ensuring the widest

24  possible reach of potential buyers.

25        C.    **The Sale Price to Be Received is Fair and Reasonable**

26        Based on the last valuation of the Private Sale Property performed prior to

27  the Petition Date by Kerry Taylor Auctions, the Debtor believes that the proposed net

28  sales proceeds of $600,000 represents a fair and reasonable price for the estate's

**SulmeyerKupetz**, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  interest in the Private Sale Property.  In fact, the prior valuation placed the value of the

2  Private Sale Property at no less than $300,000, which is half the amount expected from

3  the Christie's private sale.[4]  Thus, any amount in excess of $300,000 would be

4  considered by the Debtor to be a "full offer" price.  Since the Private Sale Property will be

5  exposed to a world-wide market by Christie's, the proposed net sales proceeds to be paid

6  to the estate represents a fair value for the Private Sale Property.  This should allay any

7  concerns regarding the marketing and expected price(s) being paid.  Therefore, the

8  Debtor is confident that the prices being paid by buyers is the highest and best price it

9  can obtain for the estate's interest in the Private Sale Property at this time.[5]

10      **D.**    **The Private Sale Was Negotiated In Good Faith**

11          The Agreement with Christie's, and the terms governing the private sale,

12  was the product of good faith, arms' length negotiations between the Debtor, Ferrer, the

13  Subchapter V Trustee, and Christie's.  It is not expected that any buyer will have any

14  prior relationship with the Debtor, or have any relationship to a creditor of the estate,

15  although it is conceivable that either of Ms. Hepburn's sons could bid on certain items

16  from the collection.  However, since the price to be paid must be according to the terms

17  set by Christie's, this ensures that fair value is being paid for any individual lot.

18          As such, the Debtor satisfies each of the elements governing the proposed

19  sale of the Private Sale Property and has articulated sound business reasons for entering

20  into the Agreement and seeking consummation of the private sale.  See declaration  of

21  Paul G. Alberghetti, attached hereto.  Therefore, given the present circumstances, the

22  Debtor urges the Court to approve the private sale.

23  _____

24  [4] A true and correct copy of the Kerry Taylor Auctions valuation is attached hereto as Exhibit "A" and
incorporated herein by reference.  According to the valuation, the Private Sale Property has a range of

25  value between £181,000 and £228,000, which equates to roughly $235,000 to $296,969 (based on present
currency exchange rates).

26  [5] Early in the case, the Debtor advised the Court that it had received an offer from a private buyer wiling to
acquire the Private Sale Property.  However, the price that was offered is far less than what the Debtor is

27  expecting to receive from the Christie's private sale, and is one of the reasons the parties agreed to forego
a private sale in lieu of the private sale conducted by Christie's.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**VI.**

**THE PRIVATE SALE SHOULD BE APPROVED FREE AND CLEAR OF LIENS,**

**CLAIMS, ENCUMBRANCES, AND INTERESTS PURSUANT TO 11 U.S.C. § 363(f)**

Section 363(f) provides that a debtor in possession may sell assets of the estate free and clear of any interest in such property of an entity other than the estate only if - (1) applicable non-bankruptcy law permits sale of such property free and clear of such interest; (2) such entity consents; (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property; (4) such interest is in bona fide dispute; or (5) such entity could be compelled, in legal or equitable proceedings, to accept a money satisfaction of such interest.  This section of the Bankruptcy Code has been interpreted to be in the disjunctive, rather than the conjunctive.  Thus, a debtor need only demonstrate that one of the elements of this section exists.  In re Elliot, 94 B.R. 343, 345 (Bankr. E.D. Pa. 1988).  In this case, at least one of the subsections exist.

As noted, Section 363(f)(4) permits the free and clear sale of property if the interest is in "bona fide dispute."  11 U.S.C. § 363(f)(4).  "The purpose of § 363(f)(4) is to permit property of the estate to be sold free and clear of interests that are disputed by the representative of the estate so that liquidation of the estate's assets need not be delayed while such disputes are being litigated."  Moldo v. Clark (In re Clark), 266 B.R. 163, 171 (B.A.P. 9th Cir. 2001).  Presently, the Debtor does not believe any creditor possesses any lien, claim, encumbrance, or interest in the Private Sale Property.  To the extent any party asserts such a claim in response to the Motion, the Debtor contends that the claim would be subject to a bona fide dispute for purposes of Section 363(f)(4).

As the court in In re Pierce, 384 B.R. 477 (Bankr. S.D. Ohio 2008) observed:

> [S]ection § 363(f)(4) . . . specifically enables [debtors in
> possession] to sell property free of any liens when the
> obligations are in bona fide dispute.  Courts have held that "a

1    bona fide dispute" exists when, ". . . *there is an objective*

2    *basis for either a factual or legal dispute as to the validity of*

3    *the debt.*"  <u>Union Planters Bank, N.A. v. Burns (In re Gaylord</u>

4    <u>Grain L.L.C.)</u>, 306 B.R. 624, 627-28 (8th Cir. BAP 2004)

5    (citations omitted).  Nothing in section 363 requires a [debtor

6    in possession] to commence an adversary prior to sale,

7    where there is an established bona fide dispute, and no such

8    requirement can be found in Bankruptcy Rule 6004 that

9    governs sales.  <u>In re Downour</u>, 2007 Bankr. LEXIS 1102,

10    2007 WL 963258 *1 (Bankr. N.D. Ohio 2007); <u>In re Gaylord</u>

11    <u>Grain L.L.C.</u>, 306 B.R. at 628; <u>In re Collins</u>, 180 B.R. 447,

12    452 n. 8 (Bankr. E.D. Va. 1995); <u>In re Oneida Lake</u>

13    <u>Development, Inc.</u>, 114 B.R. 352, 358 (Bankr. N.D.N.Y.

14    1990).

15    <u>Pierce</u>, 384 B.R. at 482 (emphasis added).

16         Similarly, in <u>In re Octagon Roofing</u>, 123 B.R. 583 (Bankr. N.D. Ill. 1991), the

17    court considered the meaning of "bona fide dispute" stating:

18         The term "bona fide dispute" is not defined in § 363(f)(4) of

19         the Code.  However, the term "bona fide dispute" is also

20         used in the Bankruptcy Code at 11 U.S.C. § 303 in

21         connection with the nature of claims asserted as basis for an

22         involuntary Chapter 7 petition.  To determine in this Circuit

23         what constitutes a bona fide dispute, "the bankruptcy court

24         must determine whether there is an objective basis for either

25         a factual or a legal dispute as to the validity of debt."  <u>In re</u>

26         <u>Busick</u>, 831 F.2d 745, 750 (7th Cir. 1987).  Under this

27         standard, a court need not determine the probable outcome

28         of the dispute, but merely whether one exists.  <u>Id.</u>  No

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   authority has been cited showing that "bona fide dispute" has

2   any different meaning when used in 11 U.S.C. § 363(f)(4), …

3   This Court rejects cases from other jurisdictions cited by

4   Trustee that implied or found that merely alleging a dispute

5   is enough to meet the burden under 11 U.S.C. § 363(f)(4).

6   The standard in <u>Busick</u> requires, at least in this Circuit, some

7   factual grounds to show that there is "an objective basis" for

8   the dispute.

9   <u>Octagon Roofing</u>, 123 B.R. at 590.

10   As a result, Section 363(f)(4) does not contemplate or require that a court

11   resolve or determine any dispute about ownership before a sale hearing, but rather

12   requires only an examination of whether there is an objective basis for either a factual or

13   legal dispute about ownership or the validity of the lien.  See <u>In re Revel AC, Inc.</u>, 802

14   F.3d 558, 573 (3d Cir. 2015) ("the mere filing of a declaratory judgment action doesn't

15   itself create a bona fide dispute under § 363(f)(4), even if Article III's 'case or controversy'

16   requirement has been met.  The latter ensures only that the declaratory judgment plaintiff

17   has standing and a redressable injury. . . .  'Bona fide dispute' in the § 363(f)(4) context

18   means that there is an objective basis - either in law or fact - to cast doubt on the validity

19   of [the interest].").

20   In <u>In re Robotic Vision Sys.</u>, 322 B.R. 502 (Bankr. D. N. H. 2005), the court

21   summarized the law applicable to Section 363(f)(4) as follows:

22   The reported cases reveal a wide range of evidentiary

23   requirements that must be met before a court may make a

24   determination that a bona fide dispute exists.  <u>Union Planters</u>

25   <u>Bank v. Burns (In re Gaylord Grain L.L.C.)</u>, 306 B.R. 624,

26   627 (8th Cir. BAP 2004) (evidence must be provided to show

27   factual grounds that there is an objective basis for a dispute);

28   <u>In re Octagon Roofing</u>, 123 B.R. at 590 (mere allegation of

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1    bona fide dispute without evidence is not sufficient); In re

2    Oneida Lake Dev., 114 B.R. 352, 357 (Bankr. N.D.N.Y.

3    1990) (where a sale needed to be concluded before an

4    evidentiary hearing could be conducted, allegations in an

5    objection to sale were sufficient to raise a bona fide dispute

6    over the avoidability of a lien).  It appears the evidentiary

7    record required to support a finding of a bona fide dispute for

8    purposes of § 363(f) depends upon a case-by-case

9    consideration of: (i) the procedural posture of the case, (ii)

10    the need to expedite the sale, and (iii) the nature of the basis

11    for determining that a dispute exists.  At a minimum, a party

12    must articulate in a pleading or in an argument an objective

13    basis sufficient under the facts and circumstances of the

14    case for the court to determine that a bona fide dispute

15    exists.

16    Robotic Vision Sys., Inc., 322 B.R. at 506 (emphasis added).

17         As these decisions indicate, there must be an objective basis for either a

18    factual or a legal dispute as to the validity of an alleged lien.  Here, the Debtor has no

19    record of ever pledging the Private Sale Property as collateral for any voluntary lien, and

20    it is unaware of any other involuntary lien, such as a tax lien, that encumbers the Private

21    Sale Property.  Thus, to the extent any party asserts such an interest, the Debtor would

22    have an objective basis for challenging the validity of the alleged lien, and Section

23    363(f)(4) would permit the private sale to proceed, with any lien attaching to the net sales

24    proceeds.[6]

25    _____

26    [6] If an unknown party asserts a lien or interest, the Debtor reserves the right raise any additional grounds in
Section 363(f) to allow the sale to proceed, including that (i) applicable non-bankruptcy law permits the sale

27    of such property free and clear of such interest; (ii) such entity consents; (iii) such interest is a lien and the
price at which such property is to be sold is greater than the aggregate value of all liens on such property;

28    (footnote continued)

1    In sum, the Debtor satisfies at least one of the alternate elements of Section

2  363(f) necessary to sell the Private Sale Property free and clear of liens, claims,

3  encumbrances, and interests.

4                                                    **VII.**

5  **THE PRIVATE SALE HAS BEEN PROPOSED IN GOOD FAITH AND ANY BUYERS**

6      **SHOULD BE GRANTED THE PROTECTIONS OF 11 U.S.C. § 363(m)**

7    Section 363(m) of the Code authorizes a court to make a finding that buyers

8  of estate property are good faith purchasers.  When cloaked with Section 363(m)

9  protection, a good faith purchaser of property is protected from the effects of reversal of

10  an order authorizing a sale as long as the trial court finds that the purchaser acted in

11  good faith and the aggrieved party fails to obtain a stay of the sale order.  Section 363(m)

12  gives purchasers of a debtor's assets an assurance of finality with respect to "who has

13  rights to estate property."  In re Gucci, 126 F.3d 380, 387 (2d Cir. 1997); Future Source

14  LLC v. Reuters Ltd., 312 F.3d 281, 286 (7th Cir. 2002) (a bankruptcy sale order may be

15  collaterally attacked only "within the tight limits" of Federal Rule of Civil Procedure 60(b)).

16  In essence, sales of estate property under Section 363(b) and (c) are insulated from

17  appeals by the safe harbor provision of Section 363(m).  In re Filtercorp, Inc., 163 F.3d

18  570, 576 (9th Cir. 1998); In re Ewell, 958 F.2d 276, 280 (9th Cir. 1992); In re PW, LLC,

19  391 B.R. 25, 35 (B.A.P. 9th Cir. 2008).

20    Although the Bankruptcy Code does not define the term "good faith," courts

21  have provided guidance as to the appropriate factors to consider.  In essence, the

22  purpose of Section 363(m) is to disable courts from backtracking on promises with

23  respect to bankruptcy sales in the absence of bad faith.  Kham and Nate's Shoes No. 2 v.

24  First Bank, 908 F.2d 1351, 1355 (7th Cir. 1990).  Generally speaking, the requirement

25  that a purchaser act in good faith speaks to the integrity of his conduct in the course of

26  _____

27  and (iv) such entity could be compelled, in legal or equitable proceedings, to accept a money satisfaction of
such interest.

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1   the sale proceeding and focuses primarily on the disclosure of all material sale terms and

2   the absence of fraud or collusion.  See In re Pine Coast Enterprise, Ltd., 147 B.R. 30, 33

3   (Bankr. N.D. Ill. 1992); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 147 (3d

4   Cir. 1986).

5                According to the Bankruptcy Appellate Panel, a "good faith purchaser" is

6   one who buys 'in good faith" and "for value."  In re M Capital Corp., 290 B.R. 743, 746

7   (B.A.P. 9th Cir. 2003).  "Typically, lack of good faith is shown by fraud, collusion between

8   the purchaser and other bidders or the trustee, or an attempt to take grossly unfair

9   advantage of other bidders."  Ewell, 958 F.2d at 279.  The burden of proof to show "good

10  faith" is on the proponent of good faith or, in this case, the Debtor.  M Capital Corp., 290

11  B.R. at 747.  In the context of auctions, "[a]n auction is sufficient to establish that the

12  purchaser has paid value so long as the purchaser bought the debtor's property in good

13  faith."  In re Onouli-Kona Land Co., 846 F.2d 1170, 1174 n.1 (9th Cir. 1988) (citing In re

14  Abbotts Dairies of Pennsylvania, Inc., 788 F.2d 143, 149 (3d Cir. 1986)).  In other words,

15  the purchase price established through a non-collusive auction sale is adequate evidence

16  of "value" to determine the good faith of the purchaser.

17               Here, the Debtor has acted in good faith in structuring the proposed private

18  sale with Christie's and there is no reason to believe that any buyer will have acted in bad

19  faith.  Certainly, Christie's will not entertain offers from parties who are attempting to

20  defraud the estate or chill bids from other potential buyers.  Moreover, as noted

21  previously, the Debtor does not expect any buyers to have any disqualifying relationship

22  to the Debtor or other creditors of the estate.  Since there are no conceivable facts raising

23  the specter of bad faith, collusion, or calling into question the propriety of the private sale,

24  the Court should extend Section 363(m) protection to any buyers.  See M Capital Corp.,

25  290 B.R. at 747 (court may not make a finding of good faith in the absence of evidence,

26  but may make such a finding if appropriate evidence is presented).

27

28

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

VIII.

## THE COURT SHOULD WAIVE THE FOURTEEN DAY STAY PRESCRIBED BY RULE

## 6004(h) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

Under Rule 6004(h) of the Federal Rules of Bankruptcy Procedure, an order authorizing the sale of property, other than cash collateral, is stayed until expiration of fourteen days after the entry of the order, unless the court orders otherwise.  In this case, the Debtor believes there is cause to waive the fourteen day stay since it will expedite the concluding of the private sale in a timely manner that will allow the Debtor to move closer towards confirmation of its Plan.  A waiver of the fourteen day stay will also prevent any potential intrusions by creditors or third parties who may seek to obstruct the private sale.

IX.

## CONCLUSION

Based on the foregoing, the Debtor respectfully requests that the Court grant the Motion in all respects, and for such other and further relief as the Court deems just and proper.

DATED: May 3, 2022

**Sulmeyer**Kupetz
A Professional Corporation


By: /s/ *Daniel A. Lev*
    Daniel A. Lev
    Attorneys for Hollywod for Children, Inc.,
    Debtor and Debtor in Possession

DAL 2734224v1

## DECLARATION OF PAUL G. ALBERGHETTI

I, Paul G. Alberghetti, declare and state as follows:

1.      I am the Secretary/Treasurer of Hollywood for Children, Inc., a New York non-profit corporation (the "Debtor"), the debtor and debtor in possession herein. Except as otherwise indicated, all statements contained in this declaration are based upon my personal knowledge, my review of relevant financial documents or my opinion based on my experience with the Debtor's operations and financial condition.  If I were called to testify as a witness in this matter, I could and would competently testify to each of the facts set forth herein based upon my personal knowledge, review of documents or opinion.  I am authorized to submit this Declaration on behalf of the Debtor.

2.      I make this declaration in support of the "Notice of Motion and Debtor and Debtor in Possession's Motion for Order Authorizing Private Sale of Personal Property Free and Clear of All Liens, Claims, and Encumbrances Pursuant to 11 U.S.C. § 363; Memorandum of Points and Authorities; Declaration of Paul G. Alberghetti in Support Thereof" (the "Motion"), through which the Debtor seeks an order, among other things, authorizing the sale of certain defined personal property free and clear of liens, claims, encumbrances, and interests, on an "as is" "where is" basis, by private sale to be conducted by Christie Manson & Woods Limited ("Christie's").  In addition, the Debtor seeks an order (i) authorizing it to execute any and all documents that may be necessary to consummate the private sale; (ii) determining that buyers are entitled to the good faith protections afforded by 11 U.S.C. § 363(m); and (iii) waiving the fourteen (14) day stay prescribed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

3.      The Debtor was created by the legendary actress Audrey Hepburn's sons, Sean Ferrer ("Ferrer") and Luca Dotti in order to continue their mother's humanitarian work.  The Debtor supported its many diverse programs through corporate business partnerships, licensing, events, co-ventures with other foundations or institutions, and public support.

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

4.       In order to establish that it had separate enduring rights to use Audrey Hepburn's name and likeness without Ferrer's consent, even though Ferrer (with his brother) were the sole owners of her intellectual property rights, a declaratory relief action was commenced by the Debtor against Ferrer in 2019.  The Debtor also sought monetary damages from Ferrer for his alleged interference with agreements that the Debtor entered into with third parties, allegedly permitting them to engage in the use of Audrey Hepburn's name and likeness without Ferrer's consent.  Ferrer filed a cross-complaint against the Debtor and others in the litigation.

5.       In October 2019, however, the trial court found that the Debtor never had the independent right to use Miss Hepburn's name and likeness, other than as part of its dba: "The Audrey Hepburn Children's Fund."  Thus, the court found that the Debtor's actions (entering into contracts with third parties without Ferrer's consent) exceeded its rights and were unlawful.  By virtue of finding in Ferrer's favor, the court also found that there was no legal basis for the Debtor's claim for interference with contract and therefore ruled in Ferrer's favor on the Debtor's damage claim as a matter of law, declining to permit that claim go to trial.  As a result, a money judgment was entered in favor of Ferrer.

6.       Despite attempts to resolve the dispute, the Debtor believed it had no alternative but to seek protection of the bankruptcy court in order to prevent any enforcement actions and to preserve the Debtor's assets over which there was no ownership dispute, including a collection of Richard Avedon photographs, a collection of couture clothing by Hubert de Givenchy consisting of gowns and accessories (the subject of this Motion), and other assorted memorabilia and personal property.

7.       On September 28, 2020 (the "Petition Date"), the Debtor filed its chapter 11 petition.  As reflected in the voluntary petition, the Debtor elected to proceed under Subchapter V of chapter 11.  The Debtor is authorized to operate its business and manage its property and financial affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.  No creditors committee has been appointed, although Andrew

**SulmeyerKupetz,** A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Levin (the "Subchapter V Trustee") has been appointed and continues to serve as the

2  Subchapter V trustee.  As noted, the Debtor's chapter 11 case was filed for the purpose

3  of protecting its valuable assets and to give the Debtor the opportunity to utilize, as

4  necessary and appropriate, its property to underwrite a plan of reorganization.

5        8.    In December 2020, the Debtor filed its "Debtor and Debtor in

6  Possession's Plan of Reorganization" (the "Plan") [Docket No. 31], which outlines the

7  orderly liquidation of the Debtor's assets and the payment of allowed claims according to

8  the Bankruptcy Code's distribution scheme on the "effective date."  The Debtor continues

9  to believe that its Plan will be consensual, and it has been diligently working with the

10  Subchapter V Trustee and interested creditors, particularly Ferrer, to reach that goal.  To

11  this end, since the Plan was first filed, the parties have engaged in good faith settlement

12  discussions regarding certain issues raised by Ferrer concerning the allowance,

13  treatment, and characterization of the scheduled claims of the Debtor's two principals,

14  myself and Mr. Dotti, as well as the proper method for marketing the Debtor's assets.

15        9.    To address these discrete issues, on October 8, 2021, the Debtor,

16  Mr. Ferrer, Mr. Dotti, and I attended a voluntary mediation with the Subchapter V Trustee

17  serving as the mediator.  Without divulging confidential settlement discussions, the

18  parties discussed Ferrer's concerns regarding the marketing and sale of the assets,

19  including his efforts to elicit the interest of an international auction house to market the

20  memorabilia, and they also discussed the nature and scope of Mr. Dotti and my individual

21  claims.  The mediation concluded with the parties agreeing to attend a second mediation

22  session once additional information on certain key issues was provided.  As a result of

23  the second session, and ongoing settlement discussions, the parties were able to reach

24  consensus on the marketing of the Debtor's most saleable assets.

25        10.    As such, the Debtor has executed a "Seller's Agreement" (the

26  "Agreement") with Christie Manson & Woods Limited ("Christie's"), one of the world's

27  premier auction houses, that will govern the private sale of the initial tranche of personal

28  property assets of the estate.  Christie's has a history with marketing for sale Audrey

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  Hepburn's memorabilia.  In fact, in 2017, Christie's conducted an auction of personal

2  items of Ms. Hepburn, which included Ms. Hepburn's extensive personal wardrobe, her

3  own annotated copies of film scripts from her best-loved films, including Breakfast at

4  Tiffany's, original portraits by major photographers from her personal archive, and other

5  memorabilia.  As such, Christie's has an institutional knowledge of Ms. Hepburn's

6  collections and the market for such memorabilia.

7          11.     Through this Motion, the Debtor now seeks approval of a private sale

8  of the defined personal property free and clear of liens, claims, encumbrances, and

9  interests on an "as is" "where is" basis.  The Debtor believes all prerequisites for approval

10 of the private sale under applicable provisions of the Bankruptcy Code have been

11 satisfied and it therefore urges the Court to grant the Motion.

12         12.     The Debtor has a sound business justification for the proposed sale

13 of the Private Sale Property (as defined in the Agreement and the Motion) to whatever

14 offerors Christie's is able to procure through its world-wide contacts and marketing

15 efforts.  The sale, in turn, will infuse the estate with significant cash that will be used to

16 pay allowed claims of the estate.  The timing of the sale is crucial given the continuing

17 accrual of storage fees that the Debtor has limited funds to satisfy, as well as the

18 prospect of the Private Sale Property deteriorating and becoming devalued by the sheer

19 passage of time.  As a result, the sale of the Private Sale Property is justified since it will

20 generate significant funds for the estate and the price to be paid is fair and reasonable.

21         13.     The Debtor has provided adequate notice of the proposed sale of the

22 estate's interest in the Private Sale Property to all creditors, parties in interest, parties on

23 the master service list, and all persons required to receive notice pursuant to Bankruptcy

24 Rules 6004(a), 6004(c), and 9014, with sufficient notice to allow any party in interest to

25 object to the proposed sale.  In addition, Christie's, the proposed sales agent, will be

26 actively marketing the Private Sale Property through its internal database of prospective

27 buyers and will continue to do so through the term of the Agreement, ensuring the widest

28 possible reach of potential buyers.

**Sulmeyer**Kupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

14.    Based on the last valuation of the Private Sale Property performed prior to the Petition Date by Kerry Taylor Auctions, the Debtor believes that the proposed net sales proceeds of $600,000 represents a fair and reasonable price for the estate's interest in the Private Sale Property.  A true and correct copy of the Kerry Taylor Auctions valuation is attached hereto as Exhibit "A" and incorporated herein by reference.  According to the valuation, the Private Sale Property has a range of value between £181,000 and £228,000, which equates to roughly $235,000 to $296,969 (based on present currency exchange rates).  Thus, any amount in excess of $300,000 would be considered by the Debtor to be a "full offer" price.  Since the Private Sale Property will be exposed to a world-wide market by Christie's, the proposed net sales proceeds to be paid to the estate price represents a fair value for the Private Sale Property.  This should allay any concerns regarding the marketing and expected prices being paid.  Therefore, the Debtor is confident that the prices being paid by buyers is the highest and best price it can obtain for the estate's interest in the Private Sale Property at this time.

15.    The Agreement with Christie's, and the terms governing the private sale, was the product of good faith, arms' length negotiations between the Debtor, Ferrer, the Subchapter V Trustee, and Christie's.  It is not expected that any buyer will have any prior relationship with the Debtor, or have any relationship to a creditor of the estate, although it is conceivable that either of Ms. Hepburn's sons could bid on certain items from the collection.  However, the price to be paid must be according to the terms set by Christie's, ensuring that fair value is paid for any individual lot.

16.    The Debtor is seeking to sell the Private Sale Property free and clear of any liens, claims, encumbrances, and interests pursuant to 11 U.S.C. § 363(f).  At the present time, the Debtor has no record of ever pledging the Private Sale Property as collateral for any voluntary lien, and it is unaware of any other involuntary lien, such as a tax lien, that would encumber the Private Sale Property.  Thus, to the extent any party asserts such an interest, the Debtor would have an objective basis for challenging the

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

1  validity of the alleged lien, and Section 363(f)(4) would permit the auction sale to

2  proceed, with any lien attaching to the net sales proceeds.

3        17.    The Debtor also is requesting that buyers of the Private Sale

4  Property be afforded "good faith" buyer status pursuant to 11 U.S.C. § 363(m).  Here, the

5  Debtor has acted in good faith in structuring the proposed private sale with Christie's and

6  there is no reason to believe that any buyer will have acted in bad faith.  Certainly,

7  Christie's will not entertain offers from parties who are attempting to defraud the estate or

8  chill bids from other potential buyers.  Moreover, as noted previously, the Debtor does not

9  expect any buyers to have any disqualifying relationship to the Debtor or other creditors

10  of the estate.  Since there are no conceivable facts raising the specter of bad faith,

11  collusion, or calling into question the propriety of the private sale, the Court should extend

12  Section 363(m) protection to any buyers.

13        18.    Finally, the Debtor is requesting that the Court waive the fourteen

14  day stay provided by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.  Here,

15  the Debtor believes there is cause to waive the fourteen day stay since it will expedite the

16  concluding of the private sale in a timely manner that will allow the Debtor to move closer

17  towards confirmation of its Plan.  A waiver of the fourteen day stay will also prevent any

18  potential intrusions by creditors or third parties who may seek to obstruct the private sale.

19  *[Remainder of page intentionally left blank]*

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA  90071-1406
TEL. 213.626.2311  •  FAX 213.629.4520

19.    The Debtor believes that the best interests of its estate and creditors will be served by authorizing the sale of the Private Sale Property free and clear of all third party interests, liens, claims, charges, and encumbrances against the same. Specifically, absent the private sale, retaining the Private Sale Property would provide little to no benefit to the Debtor and its creditors as the Debtor has ceased fulfilling its initial charitable mission and the assets would likely deteriorate and further diminish in value before being monetized.  As such, the Debtor requests that the Motion be granted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of April 2022, at Los Angeles, California.

Paul G. Alberghetti

SulmeyerKupetz, A Professional Corporation
333 SOUTH GRAND AVENUE, SUITE 3400
LOS ANGELES, CALIFORNIA, 90071-1406
TEL. 213.626.2311 • FAX 213.629.4520

# EXHIBIT A



## SLEEVELESS DRESS
## WITH BLACK DOTS AND STRIPES
AHCF-OR-01

GIVENCHY, 1988

Sleeveless dress in white silk gauze with black dots and stripes, black and white striped shawl. Labeled Givenchy 10.

Worn by Audrey Hepburn to the 60th Annual Academy Awards, 1988, Los Angeles.

£10,000-15,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy, 1999*
*Audrey Hepburn: The Beauty of Compassion - New York, USA, 2003*
*Timeless Audrey - New Orleans, USA, 2003*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*

028



## EVENING GOWN EGYPTIAN STYLE IN BLUE TEAL CHIFFON
AHCF-OR-02

GIVENCHY, 1984

Sleeveless Egyptian Style blue teal chiffon evening gown.
With beaded, strapless bodice and matching sash
Labeled Givenchy, 1984.

Worn by Audrey Hepburn to the 1984 BAFTA Award Ceremony.

£12,000-18,000

**Exhibited**

Audrey Hepburn: A woman, The Style - Florence, Italy, 1999
Audrey Hepburn: The Beauty of Compassion - New York, USA, 2003
Timeless Audrey - New Orleans, USA, 2003
Timeless Audrey - Tokyo and nine major cities, Japan, 2004
Timeless Audrey - Berlin, Germany, 2009
Beauty Beyond Beauty - Seoul, Korea, 2014
Audrey Hepburn: Always and Forever - Shanghai, China, 2017
Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018
Audrey Hepburn: Always and Forever - Shenzhen, China, 2018



## SLEEVELESS BLACK SILK SATIN DRESS WITH BOLERO IN BLACK VELVET
AHCF-OR-03

GIVENCHY, 1987

Sleeveless dress black silk satin dress with bolero in black velvet with short sleeves. Labeled Givenchy 1987.

Worn by Audrey Hepburn as a guest of honor
at the Museum of Modern Art, New York
Also worn to a UNICEF event in Chicago.

£4,000-6,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy,1999*
*Audrey Hepburn: The Beauty of Compassion - New York, USA, 2003*
*Timeless Audrey - New Orleans, USA, 2003*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*



## EVENING GOWN SLEEVELESS IN BLACK SATIN WITH SILK ROSE
AHCF-OR-04

GIVENCHY, 1982

Long sleeveless evening gown of black polka dotted silk gaze.
Decorated at the hip with a bright pink organza rose.
Labeled Givenchy 1982.

Worn by Audrey Hepburn in the movie Love Among Thieves, 1987

£10,000-15,000

**Exhibited**

Audrey Hepburn: A woman, The Style - Florence, Italy, 1999
Audrey Hepburn: The Beauty of Compassion - New York, USA, 2003
Timeless Audrey - New Orleans, USA, 2003
Timeless Audrey - Tokyo and nine major cities, Japan, 2004
Timeless Audrey - Berlin, Germany, 2009
Beauty Beyond Beauty - Seoul, Korea, 2014
Audrey Hepburn: Always and Forever - Shanghai, China, 2017
Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018
Audrey Hepburn: Always and Forever - Shenzhen, China, 2018



## OFF-WHITE SATIN EVENING DRESS
AHCF-OR-05

GIVENCHY, 1990

Off-White satin evening dress. Long sleeves.
Labeled Givenchy 1990.

Worn by Audrey Hepburn to the Golden Globes where she received
the Cecil B. De Mille Award.

£8,000-12,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy, 1999*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*



## EVENING GOWN WITH WHITE BEADED BODICE AND BLACK TULLE SKIRT
AHCF-OR-06

GIVENCHY, 1992

Evening gown with white beaded bodice, black tulle skirt and satin ribbon. A camelia at the hip. Labeled Givenchy 1992.

Worn by Audrey Hepburn to the Annual American Cinematheque Award Salute to Sean Connery in Beverly Hills, CA,1992.

£10,000-15,000

**Exhibited**

*Audrey Hepburn: A woman, The Style · Florence, Italy,1999*
*Audrey Hepburn: The Beauty of Compassion · New York, USA, 2003*
*Timeless Audrey · New Orleans, USA, 2003*
*Timeless Audrey · Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey · Berlin, Germany, 2009*
*Beauty Beyond Beauty · Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever · Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever · Chengdu, China, 2017 · 2018*
*Audrey Hepburn: Always and Forever · Shenzhen, China, 2018*



## BOLERO IN NEON PINK SILK ORGANZA
AHCF-OR-07

GIVENCHY, 1987

Neon pink organza bolero jacket with black beading.
Labeled Givenchy 1987.

Worn by Audrey Hepburn when receiving the first annual Winter Night
Award on behalf of the lighthouse, New York Association of the Blind.

£5,000-8,000

**Exhibited**

Audrey Hepburn: A woman, The Style · Florence, Italy,1999
Timeless Audrey · Tokyo and nine major cities, Japan, 2004
Timeless Audrey · Berlin, Germany, 2009
Beauty Beyond Beauty · Seoul, Korea, 2014
Audrey Hepburn: Always and Forever · Shanghai, China, 2017
Audrey Hepburn: Always and Forever · Chengdu, China, 2017 · 2018
Audrey Hepburn: Always and Forever · Shenzhen, China, 2018



## BOLERO IN BLACK SILK VELVET
AHCF-OR-08

GIVENCHY, 1987

Black silk velvet bolero jacket with pendant jet-black bead work trim
Labeled Givenchy 1987.

Worn *(further research needed)*

£5,000-8,000

**Exhibited**

*Audrey Hepburn: A woman, The Style · Florence, Italy, 1999*
*Timeless Audrey · Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey · Berlin, Germany, 2009*
*Beauty Beyond Beauty · Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever · Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever · Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever · Shenzhen, China, 2018*

035



## COCKTAIL DRESS IN BLACK VELVET
AHCF-OR-09

GIVENCHY NOUVELLE BOUTIQUE, 1989

Black velvet cocktail dress with long red satin pleated sleeves and
application of beads on epaulets.
Labeled Givenchy Nouvelle Boutique, 1989.

Worn by Audrey Hepburn to a UN Event in Dublin, 1989

£6,000-8,000

**Exhibited**

Audrey Hepburn: A woman, The Style - Florence, Italy, 1999
Timeless Audrey - Tokyo and nine major cities, Japan, 2004
Timeless Audrey - Berlin, Germany, 2009
Beauty Beyond Beauty - Seoul, Korea, 2014
Audrey Hepburn: Always and Forever - Shanghai, China, 2017
Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018
Audrey Hepburn: Always and Forever - Shenzhen, China, 2018



## LONG DRESS IN RED ORGANZA

AHCF-OR-10

GIVENCHY, 1991

Long red organza dress with round neckline, long sleeves, back of dress
has oval neckline with attached self-mantle
Labeled Givenchy, 1991.

Worn *(further research needed)*

£6,000-8,000

### Exhibited

*Audrey Hepburn: A woman, The Style · Florence, Italy,1999*
*Audrey Hepburn: The Beauty of Compassion · New York, USA, 2003*
*Timeless Audrey · New Orleans, USA, 2003*
*Timeless Audrey · Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey · Berlin, Germany, 2009*
*Beauty Beyond Beauty · Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever · Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever · Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever · Shenzhen, China, 2018*



## LONG EVENING DRESS
## IN BLACK VELVET AND TULLE
AHCF-OR-11

GIVENCHY, 1979

Long black velvet and tulle dress. Tulle studded with rhinestones
Labeled Givenchy, 1979.

Worn by Audrey Hepburn in the movie 'Bloodline', 1979

£8,000-12,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy,1999*
*Audrey Hepburn: The Beauty of Compassion - New York, USA, 2003*
*Timeless Audrey - New Orleans, USA, 2003*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*



## LONG EVENING DRESS IN BLACK SILK
AHCF-OR-12

GIVENCHY, 1991

Black long silk evening dress with a white rose pin and long sleeves
Labeled Givenchy, 1991.

Worn by Audrey Hepburn to the BAFTA Awards in 1992 where she
received the BAFTA Special Award.

£8,000-10,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy, 1999*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*



## EVENING DRESS IN BLACK SATIN
AHCF-OR-13

GIVENCHY, 1990

Black satin evening dress with long sleeves.
Labeled Givenchy, 1990.

Worn by Audrey Hepburn to a UNICEF Gala honoring her in 1991.
Also worn by Audrey Hepburn at the Banquet of the Golden Plate
presented by The American Academy of Achievement in Washington,
D.C., 1991

£8,000-12,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy, 1999*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*



## OFF-WHITE SILK CREPE LONG DRESS
AHCF-OR-14

**GIVENCHY, 1968**

Off-white silk crepe long dress, sleeveless and top embroided with gold and white sequins. Off white wrap jacket
Labeled Givenchy Paris, 1968.

Worn by Audrey Hepburn to the 40th Academy Award ceremony in 1968.

£15,000-25,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy,1999*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*



## BLOUSE IN WHITE ORGANDY
## AND LONG SKIRT IN BLACK SILK
AHCF-OR-15

Givenchy, 1981

White organdy short flounce sleeve blouse and long silk
black skirt with belt. Labeled Givenchy Nouvelle Boutique Paris, 1981.

Described in the book "Audrey Hepburn, A Woman The Style".

£800-1,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy,1999*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*



## BOLERO IN BLACK SATIN SILK
AHCF-OR-16

GIVENCHY, 1987

Black satin silk bolero with long sleeves. Labeled Givenchy, 1987.

Worn *(further research needed)*

£800-1,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy,1999*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*



## LONG EVENING DRESS IN BLACK VELVET WITH RED LONG SLEEVES
AHCF-OR-17

GIVENCHY, 1985

Black velvet long evening dress with long sleeves.
Labeled Givenchy, 1985.

**Worn** *(further research needed)*

£3,000-5,000

**Exhibited**

*Audrey Hepburn: A woman, The Style · Florence, Italy,1999*
*Timeless Audrey · Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey · Berlin, Germany, 2009*
*Beauty Beyond Beauty · Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever · Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever · Chengdu, China, 2017 · 2018*
*Audrey Hepburn: Always and Forever · Shenzhen, China, 2018*



## WEDDING DRESS IN LIGHT PINK
AHCF-RP-01

Original labeled by GIVENCHY Haute Couture, 1969
Reproduced by GIVENCHY in 2003

Empire waist light pink cashmere wedding dress with high collar and flared
cuffs gathered at the natural waist. Accompanied by a matching triangular
headscarf
This replica was reproduced by Givenchy in 2003

Worn by Audrey Hepburn for her marriage with Andrea Dotti
in Morges, Switzerland, January 18, 1969.

£3,000-5,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy, 1999*
*Audrey Hepburn: The Beauty of Compassion - New York, USA, 2003*
*Timeless Audrey - New Orleans, USA, 2003*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*



## COCKTAIL DRESS IN BLACK CLOQUEE SILK
AHCF-RP-02

Original labeled by Anthony Winter for Breakfast at Tiffany's, 1961
Reproduced by Givenchy in 1992

Cocktail sleeveless dress in black cloqué silk with a small textured leaf
pattern has a scoop neckline,
a self-belt with a front bow and a ruffled hem.
It was reproduced for Givenchy's retrospective at Paris Galleria in 1992.

Worn by Audrey Hepburn in Breakfast at Tiffany's in 1961
This dress is a replica of Audrey Hepburn's iconic "Little black dress"
which set an international trend after the release of the film.

£3,000-5,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy, 1999*
*Audrey Hepburn: The Beauty of Compassion - New York, USA, 2001*
*Audrey Hepburn: Always and Forever - Zhengzhou, China, 2018*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*



## LONG SLEEVELESS EVENING DRESS
## IN BLACK SATIN
AHCF-RP-03

Original labeled by GIVENCHY Haute Couture,1961
Reproduced by GIVENCHY in 2003

Long sleeveless evening dress in black. Satin with straight lines has curved
back neck detailing, narrow lines with front darts, a gathered narrow long
skirt and a wide fabric belt.
It was reproduced for Givenchy's retrospective at Paris Galleria in 1992.

Worn by Audrey Hepburn in 'Breakfast at Tiffany's in 1961

£10,000-15,000

**Exhibited**

*Audrey Hepburn: A woman, The Style – Florence, Italy,1999*
*Audrey Hepburn: The Beauty of Compassion – New York, USA, 2003*
*Timeless Audrey - New Orleans, USA, 2003*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*



## TWO PIECE DOUBLE-BREAST SUIT IN BLACK WOOL
AHCF-RP-03

Original labeled by GIVENCHY for 'Sabrina' in 1953
Reproduced by GIVENCHY in 2003

The suit has collarless, black wool, double-breasted shaped jacket with black round buttons, matching with a straight wool skirt.

Worn by Audrey Hepburn in 'Sabrina', 1953, as she arrives at the Glen Cove Station in the opening sequence of the film.

£1,000-1,500

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy, 1999*
*Audrey Hepburn: The Beauty of Compassion - New York, USA, 2003*
*Timeless Audrey - New Orleans, USA, 2003*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*



## DOUBLE-BREASTED COAT IN ORANGE DOUBLE WOOL

AHCF-RP-04

Original labeled by GIVENCHY Haute Couture
for 'Breakfast at Tiffany's', 1961
Reproduced by GIVENCHY in 2003

Orange wool double-breasted coat with and orange silk satin lining has
a high collar, and waist detailing is accented by two pairs of buttons and
decorative belt on the back.
It was reproduced for Givenchy's retrospective at Paris Galleria in 1992.

Worn by Audrey Hepburn in 'Breakfast at Tiffany's' in 1961

£3,000-5,000

**Exhibited**

*Audrey Hepburn: A woman, The Style - Florence, Italy, 1999*
*Audrey Hepburn: The Beauty of Compassion - New York, USA, 2003*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Timeless Audrey - New Orleans, USA, 2003*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*



## IVORY SATIN PLEATED HAT
AHCF-RP-05

Original labeled by GIVENCHY Haute Couture for 'Sabrina' in 1953
Reproduced by GIVENCHY in 2003

White silk fitted hat has overall pleats and folds with
a circular opening at the rear.
Replica reproduced by Givenchy in 2003.

Worn by Audrey Hepburn in the opening train sequence of
'Sabrina', 1953

£1,500-2,500

**Exhibited**

*Audrey Hepburn: A woman, The Style – Florence, Italy, 1999*
*Audrey Hepburn: The Beauty of Compassion – New York, USA, 2003*
*Timeless Audrey - New Orleans, USA, 2003*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*

**Essay**



## SABRINA BALL GOWN TWO PIECE
## IN SILK ORGANZA
AHCF-RP-06

Original labeled by GIVENCHY Haute Couture for 'Sabrina' in 1953
Reproduced by GIVENCHY in 2003

Two-piece gown of white silk organza embroidered with flowers and swags
The sleeveless bodice tops a full skirt over edge with black silk ruffles terminating in a full train.
Replica reproduced by Givenchy in 2003

Worn by Audrey Hepburn in the summer ball scene of 'Sabrina', 1953

£10,000-15,000

Exhibited

*Audrey Hepburn: Dress from Sabrina – Club Turner Classic Movies – Los Angeles, USA, 2012*
*Audrey Hepburn: The Beauty of Compassion – New York, USA, 2003*
*Timeless Audrey - New Orleans, USA, 2003*
*Timeless Audrey - Tokyo and nine major cities, Japan, 2004*
*Timeless Audrey - Berlin, Germany, 2009*
*Beauty Beyond Beauty - Seoul, Korea, 2014*
*Audrey Hepburn: Always and Forever - Shanghai, China, 2017*
*Audrey Hepburn: Always and Forever - Chengdu, China, 2017 - 2018*
*Audrey Hepburn: Always and Forever - Shenzhen, China, 2018*

051

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 333 South Grand Avenue, Suite 3400, Los Angeles, CA 90071.

A true and correct copy of the foregoing document entitled (*specify*): **NOTICE OF MOTION AND DEBTOR AND DEBTOR IN POSSESSION'S MOTION FOR ORDER AUTHORIZING PRIVATE SALE OF PERSONAL PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES PURSUANT TO 11 U.S.C. § 363; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF PAUL G. ALBERGHETTI IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) May 3, 2022, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Christopher J Harney on behalf of Interested Party Courtesy NEF
charney@tocounsel.com, stena@tocounsel.com

Daniel A Lev on behalf of Debtor Hollywood for Children, Inc., a New York non-profit corporation
dlev@sulmeyerlaw.com, ccaldwell@sulmeyerlaw.com;dlev@ecf.inforuptcy.com

Andrew W. Levin (TR)
andy@fairpointllc.com, C198@ecfcbis.com

Matthew D Pham on behalf of Interested Party Courtesy NEF
mpham@allenmatkins.com, mdiaz@allenmatkins.com

Dean G Rallis, Jr on behalf of Interested Party Courtesy NEF
drallis@hahnlawyers.com, jevans@hahnlawyers.com;drallis@ecf.courtdrive.com

Jeffrey S Shinbrot on behalf of Creditor Sean Hepburn Ferrer
jeffrey@shinbrotfirm.com, sandra@shinbrotfirm.com

John N Tedford, IV on behalf of Interested Party Courtesy NEF
jtedford@DanningGill.com, danninggill@gmail.com;jtedford@ecf.inforuptcy.com

United States Trustee (LA)
ustpregion16.la.ecf@usdoj.gov

Hatty K Yip on behalf of U.S. Trustee United States Trustee (LA)
hatty.yip@usdoj.gov, hatty.k.yip@usdoj.gov

☐ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) May 3, 2022 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

The Honorable Robert Kwan
U.S. Bankruptcy Court
Roybal Federal Building
255 E. Temple Street, Suite 1682
Los Angeles, CA 90012

☒ Service information continued on attached page.

CC 2707762v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL**:

**Debtor and Debtor in Possession**
Hollywood for Children, Inc., a New York non-profit
corporation
Paul G. Alberghetti
1920 Hillhurst Avenue, #429
Los Angeles, CA 90027

**All Creditors**

Accurate Data Networks
2001 S. Barrington Ave., Suite 105
Los Angeles, CA 90025-5337

Brandlin & Associates
An Accountancy Corporation
12100 Wilshire Blvd., #1120
Los Angeles, CA 90025-7111

Employment Development Department
PO Box 989061
West Sacramento, CA 95798-9061

Fred Kan & Co.
3104-6, 31/F, Central Plaza
18 Harbor Road
Hong Kong

Freeman, Freeman & Smiley, LLP
1888 Century Park East, #1900
Los Angeles, CA 90067-1723

Gerson Lehrman Group
~~60 East 42nd St., 3rd Floor~~
~~New York, NY 10165-1200~~
**RTS - undeliverable**

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Luca Dotti
~~Via Cerracchi 4A~~
~~Rome 00197 IT~~
**undeliverable**

Sean Ferrer
c/o Segal Law Group
9100 Wilshire Blvd., Suite 616E
Beverly Hills, CA 90212-3557

State of California
Department of Justice
PO Box 903447
Sacramento, CA 94203-4470

Theodora Ohringer PC
1840 Century Park East #500
Los Angeles, CA 90067-2120

Western Justice Center
55 South Grand Avenue
Pasadena, CA 91105-1602

**Interested Parties**

Attorney General of the State of California
David K. Eldan, Esq.
Deputy Attorney General
Charitable Trusts Section
Office of the Attorney General
300 S. Spring Street, Suite 1702
Los Angeles, California 90013

Attorneys for Christie Manson and Wood Limited
Mark S. Lichtenstein, Esq.
Akerman LLP
1251 Avenue of the Americas, 37th Floor
New York, New York 10020

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is
filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| May 3, 2022 | Cheryl Caldwell | /s/Cheryl Caldwell |
| *Date* | *Printed Name* | *Signature* |

CC 2707762v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                     **F 9013-3.1.PROOF.SERVICE**